IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:14-CV-228-FL

| | |
|---|---|
| BILLY G. DIXON, )<br>)<br>Plaintiff/Claimant, )<br>)<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND**<br>**RECOMMENDATION** |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, DE-21] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Claimant Billy G. Dixon ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for a period of disability and Disability Insurance Benefits ("DIB"). Claimant filed a response to Defendant's motion [DE-24], and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded for further proceedings.

### I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on July 27, 2010, alleging disability beginning March 29, 2010. (R. 21, 137-38). The claim was denied initially and upon reconsideration. (R. 56-79). A hearing before the Administrative Law Judge ("ALJ") was held on May 31, 2013, at which Claimant, who was unrepresented by counsel, Claimant's wife, and a

vocational expert ("VE") appeared and testified. (R. 35-55). On July 24, 2013, the ALJ issued a decision denying Claimant's request for benefits. (R. 21-34). Claimant requested a review of the ALJ's decision, and the Appeals Council denied Claimant's request for review on October 10, 2014. (R. 1-6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling*

2

*Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges that the ALJ erred by (1) failing to investigate Claimant's intelligence or literacy; (2) improperly evaluating Claimant's credibility; and (3) improperly evaluating Claimant's residual functional capacity ("RFC"). Pl.'s Mem. [DE-20] at 7-14.

3

## IV. FACTUAL HISTORY

### A.   ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found that Claimant had not engaged in substantial gainful employment since his alleged onset date of March 29, 2010. (R. 23). Next, the ALJ determined that Claimant had the severe impairments of history of lumbar fusion with fixations and residual effects, posttraumatic stress disorder ("PTSD"), and depression. *Id.* Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restriction of his activities of daily living, moderate difficulties in social functioning and maintaining concentration, persistence and pace performing detailed tasks but mild difficulties performing simple tasks, and no episodes of decompensation. (R. 24). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 23-24).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with the following limitations: only occasional climbing of stairs and ramps; occasional bending/balancing, stooping, crawling, kneeling, or crouching; occasional overhead reaching; never climb ropes, ladders, or scaffolds; sit/stand adjust as necessary without a

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

loss of production; avoid hazardous machinery; occasional contact with co-workers and the general public; simple, routine, repetitive tasks; and low production occupation with no complex decision making, constant changes, or dealing with crisis situations. (R. 24-27). In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 26-27). At step four, the ALJ concluded that Claimant was unable to perform any past relevant work. (R. 28). However, at step five, the ALJ concluded there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 29).

**B.   Claimant's Testimony at the Administrative Hearing**

Claimant was unrepresented by counsel at the administrative hearing. (R. 37). At the outset the ALJ informed Claimant regarding his right to representation and offered to postpone the hearing so that Claimant could obtain counsel, which Claimant declined. (R. 37-38, 136). Claimant was 51 years old and married with no children at the time of the administrative hearing. (R. 40-41). He completed the eighth grade and began ninth grade before leaving school. (R. 40). Claimant last worked in insulation and pipe fitting from 2008 through 2010, but was laid off when a piece of steel fell on him. *Id.* He received unemployment benefits for a few months but no worker's compensation. *Id.*

Claimant had back-fusion surgery in 2009, but wishes he had not because his pain worsened. (R. 41). He had not had his back reevaluated but Dr. Voos[2] said Claimant would probably have another back surgery in five years. *Id.* Claimant utilizes a walker at home sometimes but did not have an assistive device at the hearing. *Id.* On a scale of zero to ten, with zero being no pain and

---

[2] The transcript from the administrative hearing says "Dr. Booth," which appears to be an error because there is no such name mentioned in the medical records. (R. 41, 43). However, Claimant's surgeon is Dr. Voos, and it appears this is to whom Claimant is referring.

5

ten being the worst pain, Claimant rated his pain from a six to an eight. (R. 43). Claimant takes medication to relieve his pain. *Id.* After his surgery, Dr. Voos recommended therapy and Claimant went one or two times, but he could not do it because he cannot lift his hands above his head or get down on his hands and knees. *Id.* When he tries to reach his hands above his head he gets pain and numbness in his left arm and pain in his shoulders. (R. 43-44). Claimant is right hand dominant and can raise his right arm above his head. (R. 44). Claimant had not suffered any shoulder injury and explained that the pipe fell on the lower part of his spine. *Id.* Claimant has no problems lifting his head. *Id.* Claimant had a motorcycle accident when he was 15 years old and was in a body cast for three years, but did not injure his back at that time. *Id.* Claimant has bad feet and when he goes to the mailbox or walks in the yard it feels as if he is walking on bone. (R. 45-46). Claimant had not seen a doctor about his feet due to lack of insurance and had not visited the emergency room but had told his wife he needs to do so. (R. 46).

In the mornings, Claimant sits in a chair until he can get the strength to do anything. (R. 42). He can take care of his personal needs and does some driving although his wife mostly drives. *Id.* Claimant does no household chores and mostly watches television or reads the paper now and then. *Id.* Claimant sometimes shops with his wife, but does not feel like doing anything due to his depression. (R. 44). Claimant attends church where he serves as a deacon and sometimes leads prayers and songs. (R. 45). Claimant does not go out to eat because he is a homebody and cannot afford to do so. *Id.*

C. **Margie W. Dixon's Testimony at the Administrative Hearing**

Claimant's wife, Margie W. Dixon, testified at the administrative hearing. (R. 47-50). Claimant and his wife had been married almost four years. (R. 47). They were not married at the

6

Case 4:14-cv-00228-FL   Document 25   Filed 01/21/16   Page 6 of 20

time Claimant had his back surgery, but she did know him then. (R. 47). She said Claimant has been depressed since his surgery, he sits around crying and biting his fingernails, and he is agitated 90 percent of the time. *Id.* Claimant does not sleep well, talks and yells all night long while asleep, and is irritable the next day as a result. *Id.* Claimant complains about pain and numbness in his back and arms and that his arms feel heavy and weighted down, and he also has bad feet with bunions or callouses. (R. 47-48, 50). She said Claimant does not help with household chores. (R. 48). He used to golf and bowl, but has not done so since his surgery and is no longer interested in doing anything. *Id.* Five or six years ago Claimant spent four years trying to earn his GED, but he has a third grade reading level and does not understand the meaning of many everyday words. (R. 48-49). Claimant lived in an abusive environment as a child, was in an orphanage for sometime, and was adopted at age nine. (R. 49). (R. 50).

### D. Vocational Expert's Testimony at the Administrative Hearing

Mark Leaptrot testified as a VE at the administrative hearing. (R. 50-54). The VE classified Claimant's past relevant work as follows: pipe fitter and insulation helper, Dictionary of Occupational Titles ("DOT") code 869.687-026, very heavy exertion level, unskilled, and SVP of 2; grounds maintenance person, DOT code 406.687-010, medium exertion level, unskilled, and SVP of 2; and fabricator for truck manufacturing, DOT code 809.381-010, medium exertion level, skilled, and SVP of 5. (R. 52). The ALJ next asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant with the RFC to perform light work with the following additional limitations: occasional bending, balancing, stooping, crawling, kneeling, or crouching; never climb ropes, ladders, or scaffolds; avoid occupations with hazardous machinery and exposure to vibrations; occasional overhead reaching with the left nondominant upper extremity;

7

simple, routine, and repetitive tasks; low production occupation, requiring no complex decision making, constant change, or dealing with crisis situations; occasional contact with coworkers and the general public; a sit stand adjust option, meaning not off task but rather the option to sit, stand, and adjust the body as necessary for comfort without a loss of production; and wearing a soft back brace underneath the clothes that would not affect production in any way. (R. 52-53). The VE opined that the hypothetical individual could not perform any of Claimant's past relevant work, but could perform the jobs of garment sorter, DOT code 222.687-014, light exertion level, unskilled, and SVP of 2; house sitter, DOT code 309.367-010, light exertion level, unskilled, and SVP of 2; and egg washing machine attendant, DOT code 529.686-030, light exertion level, and unskilled. (R. 53). The ALJ next asked the VE to assume the same individual would miss four or more days per month for various reasons, and the VE opined that even three days a month of absenteeism is considered excessive and precludes any work in the national economy. *Id.* The VE indicated his testimony and the DOT were consistent with the exception of the sit/stand option, which was based on his personal and professional observations. (R. 54).

## V. DISCUSSION

### A. The ALJ's Consideration of Claimant's Intelligence and Literacy

Claimant contends that the ALJ erred by failing to investigate Claimant's intelligence or literacy given evidence in the record that he cannot read or write well and had a limited education. Pl.'s Mem. [DE-20] at 7-10. Specifically, Claimant contends that the ALJ had a duty to order an IQ test, Claimant's school records, and a consultative examination to determine whether Claimant suffered from an intellectual disability. *Id.* Defendant contends the ALJ properly evaluated Claimant's intellectual functioning. Def.'s Mem. [DE-22] at 4-6. The undersigned concludes the

8

ALJ erred in failing to consider Claimant's intellectual ability and literacy.

The ALJ did not evaluate Claimant's intellectual ability and literacy, despite Claimant's assertion that he cannot read well as a basis for his disability claim and other evidence in the record that Claimant's intellectual functioning may be limited. *See* 20 C.F.R. § 404.1512(a) ("We will consider only impairments *about which you say you have or about which we receive evidence*.") (emphasis added); *Harrell v. Astrue*, No. 4:06-CV-00240-FL, 2008 WL 858771, at *3 (E.D.N.C. Mar. 31, 2008) (unpublished) ("The ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate.") (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). While the ALJ did recite Claimant's testimony that he reads the paper (R. 25), which Claimant actually testified he does "now and then" (R. 42), the ALJ also noted Claimant's wife's testimony that Claimant has a hard time understanding things, has a poor vocabulary and problems coming up with words, and quit school in the ninth grade (R. 26, 49). Claimant's wife also testified that Claimant tried for four years to obtain a GED but reads on a third grade level (R. 48), and Claimant's treating psychologist characterized Claimant's intelligence as ranging from below average to average (R. 310-32). A disability report submitted to the SSA states that Claimant cannot read well, but that he completed the 10th grade and attended no special education classes and had not sought care or treatment for any mental condition including emotional or learning problems. (R. 154-58). A Function Report submitted to SSA indicates Claimant has reading problems and a learning disability and cannot pay bills, count change, handle a savings account, use a checkbook or money orders, or follow written instructions well. (R. 172, 174). On a disability form submitted to the state, Claimant indicated he cannot read or write well. (R. 186).

9

Here, where there is conflicting evidence regarding Claimant's intellectual ability and level of litercy, it is the role of the ALJ to analyze and weigh the evidence and make determinations regarding Claimant's alleged limitations in the first instance. *See Fox v. Colvin*, No. 14-2237, 2015 WL 9204287, at *5 (4th Cir. Dec. 17, 2015) (unpublished) ("Inconsistent evidence abounds, and yet the ALJ 'leaves us to wonder' in such a way that we cannot conduct 'meaningful review.'") (citing *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); *Radford v. Colvin*, 734 F.3d 288, 296 (4th Cir. 2013)). Although Defendant points to evidence in the record she suggests demonstrates that Claimant's intellectual ability was not functionally limiting, Def.'s Mem. [DE-22] at 5-6, the Fourth Circuit's "precedent makes clear that it is not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record." *Fox*, 2015 WL 9204287, at *5.

Defendant also asserts that the ALJ properly evaluated Claimant's intellectual functioning pursuant to the special technique set forth in 20 C.F.R. § 404.1520a. Def.'s Mem. [DE-22] at 6. However, it is unclear whether the ALJ considered Claimant's intellectual ability and literacy, or only his PTSD and depression, in applying the special technique. (R. 23-24). There is no indication the ALJ considered whether Claimant's intellectual ability was such that it constituted a medically determinable impairment, in accordance with the first step of the special technique, 20 C.F.R. § 404.1520a(b)(1), where the ALJ appears to have only rated the degree of functional limitation with regard to Claimant's PTSD and depression, which he identified as severe impairments. (R. 23-24). Furthermore, this court has held that where a "claimant is unrepresented by counsel at a hearing before an ALJ, the claimant is entitled to the sympathetic assistance of the ALJ to develop the record, to assume a more active role and to adhere to heightened duty of care and responsibility." *Smith v.*

10

*Barnhart*, 395 F. Supp. 2d 298, 301 (E.D.N.C. 2005) (internal quotation marks omitted) (quoting *Crider v. Harris*, 624 F.2d 15, 16 (4th Cir. 1980) (quoting *Livingston v. Califano*, 614 F.2d 342, 345 (3d Cir. 1980))). Accordingly, it is recommended that the case be remanded so that the ALJ can consider Claimant's intellectual functioning, including his level of literacy, in the first instance with further development of the record (i.e., obtaining school records, IQ testing, or a consultative examination) as necessary.

## B.    The ALJ's Consideration of Claimant's Credibility and RFC

Claimant contends the ALJ erred in discounting Claimant's credibility, resulting in an RFC not supported by substantial evidence. Pl.'s Mem. [DE-20] at 10-13. Claimant also contends that the RFC and hypothetical to the VE failed to account for his moderate difficulties maintaining concentration, persistence, and pace. *Id.* at 13-14. Defendant responds that the ALJ properly evaluated Claimant's credibility and the RFC is supported by substantial evidence. Def.'s Mem. [DE-22] at 6-12.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio*, 780 F.3d at 636 (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in

11

making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). Furthermore, in assessing functional limitations, the ALJ must consider "all relevant evidence to obtain a longitudinal picture of [the claimant's] overall degree of functional limitation." 20 C.F.R. § 404.1520a(c)(1). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

When assessing a claimant's RFC, it is within the province of the ALJ to determine a claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulation 20 C.F.R. § 404.1529(a) provides the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593-94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes this first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which

it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564-65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595-96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see also Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4-8 (E.D.N.C. Mar. 23, 2011) (unpublished) (finding the ALJ properly considered the entire case record to determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (E.D.N.C. Apr. 26, 2011).

1.  **Credibility Assessment**

In formulating Claimant's RFC, the ALJ considered Claimant's testimony at the administrative hearing and determined Claimant's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." (R. 26). Claimant contends the use of this language violated the Fourth Circuit's decision in *Mascio* with respect to the use of boilerplate language in assessing a claimant's credibility. Pl.'s Mem. [DE-20] at 10-11. In *Mascio*, it was the ALJ's finding

13

that the claimant's statements were not entirely credible "to the extent they are inconsistent with the above residual functional capacity assessment" that the court found problematic. 780 F.3d at 639. The Fourth Circuit explained that the boilerplate language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" *Id.* (quoting *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012)). Here, the ALJ did not violate *Mascio* and S.S.R. 96-8p by comparing Claimant's alleged pain with the RFC, but rather considered Claimant's credibility regarding his allegations of pain as part of the RFC analysis. Claimant concedes in his brief that the ALJ "eventually discusses several reasons for finding [Claimant] less than fully credible." Pl.'s Mem. [DE-20] at 11. Accordingly, the language used by the ALJ—that Claimant's statements "are not entirely credible for the reasons explained in this decision"—does not in and of itself amount to error. However, the inquiry does not end here where Claimant also contends that the ALJ's reasons for discounting Claimant's credibility lack merit. Pl.'s Mem. [DE-20] at 11-12.

Claimant first takes issue with the ALJ's finding that the timing of the onset of Claimant's depression is "a bit questionable" and the ALJ's suggestion that Claimant "may have possibly complained of depressive symptoms in an effort to build-up his disability claim." (R. 26-27); Pl.'s Mem. [DE-20] at 11. Defendant contends the ALJ reasonably questioned the validity of Claimant's complaints of depression, where there is no record of Claimant's depression until June 30, 2010, one month before Claimant filed for disability benefits. Def.'s Mem. [DE-22] 7-8. Despite the ALJ's suggestion of suspicious-timing, the ALJ acknowledged "the evidence shows that [Claimant] has received outpatient mental health treatment on a regular basis" (R. 26), found at step two that Claimant's depression was a severe impairment (i.e., significantly limits a claimant's physical or

14

mental abilities to perform basic work activities, 20 C.F.R. § 404.1520(c)) (R. 23), and found Claimant's mental impairments (PTSD and depression, of which depression was the only impairment specifically discussed in the RFC assessment) caused moderate difficulties in maintaining social functioning and maintaining concentration, persistence or pace performing detailed tasks (R. 27-28). The ALJ's speculation that Claimant may have complained of depressive symptoms to bolster his disability claim is not a persuasive reason to discount Claimant's credibility in light of the records, which the ALJ cited, indicating Claimant was diagnosed with and treated for depression (R. 310-37).

Next, the Claimant contends the ALJ erred in finding Claimant's allegations of pain less credible because he failed to follow-up with a pain management referral. Pl.'s Mem. [DE-20] at 11-12. In discussing Claimant's back pain, the ALJ stated as follows:

> [C]laimant was referred to a pain clinic on multiple occasions (Exhibits 1F, p. 2 and 4F, p. 1), but there is no evidence that he was ever seen at a pain clinic. In fact, Exhibit 4F, p. 1 shows the claimant never responded to the pain clinic's calls or letters when they were trying to schedule his appointment and his pain management referral was cancelled. Surely if the claimant's pain were as severe as he has alleged, he would have followed through with the pain clinic referrals.

(R. 26). The ALJ is correct that an April 14, 2011 note from Washington Family Medicine Center indicates that Claimant was referred for pain management at PCMH, who was unsuccessful in contacting Claimant and that referral was cancelled. (R. 297). Claimant was also denied care at another pain management clinic to which he was referred because it did not accept self-pay patients. (R. 300). However, the ALJ erroneously reports that "there is no evidence that he was ever seen at a pain clinic" where Claimant began pain management at Community Wellness Center in June 2011 and received treatment for his chronic pain there monthly through September 2012. (R. 310-37). The ALJ's decision indicates he placed great significance on his mistaken belief that Claimant failed

15

to obtain pain management and, thus, the error is not harmless. (R. 26) ("Surely if the claimant's pain were as severe as he has alleged, he would have followed through with the pain clinic referrals."). Accordingly, the ALJ's reasoning here does not undermine Claimant's credibility.

The ALJ cited other evidence in discussing Claimant's allegations of pain, such as Claimant only seeking treatment from his primary care physician and not his surgeon after re-injuring his back, a CT scan showing no evidence of hardware failure from Claimant's surgery, and that Claimant had no neurological deficits and only slight limits on the range of motion of his spine. (R. 26). However, the ALJ misstates evidence here as well. The ALJ stated that "claimant fell one month after he returned to work, aggravating his back pain, but he never sought re-evaluation of his back pain with his surgeon. Instead, he sought treatment only with his primary care physician." *Id.* An April 19, 2010 treatment note from Claimant's surgeon Dr. Voos indicates Claimant did follow-up with his surgeon after he fell. (R. 228) ("Mr. Dixon presents today for follow up of his lumbar spine. I saw him back in October, 2009. He went back to work and states that one month later he fell. Since that time, he has had aggravated lower back pain."). Dr. Voos ordered a CT scan which showed some "postoperative and degenerative changes" but "[n]o critical central canal narrowing suggested." (R. 225). Dr. Voos found no evidence of hardware failure, but mild bulging of the disk at L3-L4 with no absolute root compromise, and concluded that there were no changes on the CT scan that would warrant further surgery but recommended pain management. (R. 224). Given the errors in the ALJ's credibility analysis, the undersigned concludes it is not supported by substantial evidence. The undersigned declines to re-weigh Claimant's credibility by speculating as to how these errors might have impacted the ALJ's ultimate credibility determination, *see Mastro*, 270 F.3d at 176, and on remand the ALJ should reconsider Claimant's credibility and, to the extent necessary,

16

Claimant's RFC.

2. **RFC Assessment**

Claimant also contends that the ALJ's limitation to "simple, routine, repetitive tasks" in the RFC is insufficient to account for Claimant's moderate difficulties in maintaining concentration, persistence, or pace, citing *Mascio*, and resulted in an incomplete hypothetical to the VE. Pl.'s Mem. [DE-20] at 13-14; Pl.'s Resp. [DE-24] at 1-2. Defendant in response asserts that the ALJ not only limited Claimant to "simple, routine, repetitive tasks" but also to a "low production occupation with no complex decision making, constant changes or dealing with crisis situations," distinguishing this case from *Mascio*. Def.'s Mem. [DE-22] at 11. Defendant also points out that the ALJ found Claimant would have moderate difficulties in maintaining concentration, persistence, or pace only in performing "detailed tasks" and mild limitations in this area when performing simple tasks. *Id.* Defendant concludes it is apparent the ALJ's conclusion that Claimant would have moderate difficulties in maintaining concentration, persistence, or pace only in performing detailed tasks is related to Claimant's intellectual limitations rather than difficulty sustaining focus or staying on task. *Id.*

In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Here, the ALJ's RFC and hypothetical to the VE also included a limitation to a low production

17

occupation, which addresses Claimant's moderate difficulties in pace, and limitations to no complex decision making, constant changes or dealing with crisis situations, and only occasional contact with coworkers and the general public, which address Claimant's moderate difficulties in concentration and persistence. (R. 24, 52). This court has held that such limitations sufficiently account for a claimant's moderate limitations in concentration, persistence, or pace. *See Weeks v. Colvin*, No. 5:14-CV-155-D, 2015 WL 5242927, at *2 (E.D.N.C. Sept. 8, 2015) (unpublished) (finding limitation "to performing simple, routine, repetitive tasks with only occasional contact with the general public in an environment with few workplace changes" sufficiently accounted for difficulties with concentration and persistence but not pace); *Ford v. Colvin*, No. 4:14-CV-79-D, 2015 WL 5008962, at *3 (E.D.N.C. Aug. 19, 2015) (unpublished) (distinguishing *Mascio* where the ALJ accounted for claimant's moderate limitation in pace through a limitation to a "low production occupation" and in persistence through a limitation of "no constant change"); *see also Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. Apr. 6, 2011) (unpublished) (finding hypothetical including the limitations of "understand, remember, and carry out simple instructions, would have limited contact with the public and coworkers, and would not have a quota to fulfill" accounted for moderate difficulties with concentration, persistence, and pace); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. Jan. 29, 2010) (unpublished) ("[T]he ALJ captured [claimant's] moderate limitation in concentration, persistence, and pace when he included a restriction of 'no high production goals.'"); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (unpublished) (distinguishing *Mascio* where the ALJ limited claimant to "simple, repetitive, routine tasks in a stable work environment at a nonproduction pace with only occasional public contact," accounting for limitation in concentration and persistence by restricting her to a stable work environment with

18

only occasional public contact and in pace by restricting her to nonproduction pace). *But see Jones v. Colvin*, No. 4:14-CV-00200-RN, 2015 WL 4773542, at *6 (E.D.N.C. Aug. 13, 2015) (unpublished) (concluding, prior to the decisions in *Weeks* and *Ford*, that limitation "to simple, routine, repetitive tasks; should work in a low production occupation, one which would require no complex decision making, constant change or dealing with crisis situations" did not adequately address moderate limitation in concentration, persistence, and pace). Accordingly, the ALJ properly accounted for Claimant's moderate difficulties in maintaining concentration, persistence, and pace in the RFC and hypothetical to the VE.

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-19] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-21] be DENIED, and the case be remanded for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 4, 2016** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

Submitted, this the 21st day of January 2016.

Robert B. Jones, Jr.
United States Magistrate Judge